UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-00833-JMS-TAB |
| | ) |
| NANCY A. BERRYHILL, Deputy Commissioner | ) |
| for Operations, Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

## **ENTRY REVIEWING THE DEPUTY COMMISSIONER'S DECISION**

Plaintiff Gary B. applied for supplemental security income from the Social Security Administration ("SSA") on September 8, 2014, alleging an onset date of June 1, 1992. [Filing No. 5-2 at 34.] His application was initially denied on December 3, 2014, [Filing No. 5-7 at 2], and upon reconsideration on March 20, 2015, [Filing No. 5-7 at 9]. Administrative Law Judge Julia Gibbs (the "ALJ") held a hearing on May 24, 2016. [Filing No. 5-2 at 52–92.] The ALJ issued a decision on March 1, 2017, concluding that Gary B. was not entitled to receive supplemental security income. [Filing No. 5-2 at 31.] The Appeals Council denied review on January 22, 2018.

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Aug. 13, 2018). The case caption has been updated to reflect Ms. Berryhill's current official title.

1

[Filing No. 5-2 at 2.] On March 15, 2018, Gary B. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Gary B. was 60 years of age at the time he applied for supplemental security income. [Filing No. 5-8 at 2.] He has completed at least a high school education and was found to have no past relevant work. [Filing No. 5-2 at 43.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Gary B. was not disabled. [Filing No. 5-2 at 44.] Specifically, the ALJ found as follows:

- At Step One, Gary B. had not engaged in substantial gainful activity[4] since September 8, 2014, the application date.[5] [Filing No. 5-2 at 36.]

- At Step Two, Gary B. had the following severe impairments: "unspecified anxiety disorder and unspecified depressive disorder." [Filing No. 5-2 at 36 (citation omitted).]

- At Step Three, Gary B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 5-2 at 37.]

- After Step Three but before Step Four, Gary B. had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: cannot work around crowds; cannot perform fast-paced work such as assembly line work; cannot perform tasks which require confrontation with the public or more than superficial interaction with co-workers; cannot work in a hospital or nursing home setting; and can perform only unskilled work which does not require remembering complex instructions." [Filing No. 5-2 at 39.]

- At Step Four, Gary B. did not have any past relevant work to evaluate. [Filing No. 5-2 at 43.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

[5] Supplemental security income is not compensable before the application date. 20 C.F.R. § 416.335.

- At Step Five of the analysis, relying on VE testimony considering Gary B.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision as a hand packager, cleaner, and dishwasher. [Filing No. 5-2 at 43–44.]

## III.
### DISCUSSION

Gary B. makes three assertions of error regarding the ALJ's decision, each of which the Court will consider in turn.

### A. Whether the ALJ Needed to Address Gary B.'s Ability to Sustain Work

Gary B. argues that the ALJ erred by failing to address a line of evidence demonstrating that he would be incapable of sustaining work in accord with the vocational expert's testimony about attendance and on-task tolerances in the competitive workforce. [Filing No. 8 at 18.] Specifically, Gary B. cites evidence that he needs to attend appointments for necessary treatment for his impairments consisting of seeing a psychiatrist every few months, meeting with a case manager on a weekly basis, and attending individual therapy weekly. [Filing No. 8 at 18.] Gary B. asserts that a claimant must be able to sustain work for a significant period of time in order to be found capable of earning substantial gainful activity. [Filing No. 8 at 19.] Gary B. concludes that he "simply requires too much treatment on a regular basis to allow him to maintain a steady work schedule." [Filing No. 8 at 19.]

The Deputy Commissioner argues that a pattern of seeking treatment does not conclusively show disability and that Gary B. has not demonstrated that his medical visits would preclude full-time employment. [Filing No. 13 at 10.] Further, the Deputy Commissioner asserts that Gary B. has not established that he is unable to sustain work for more than a short period and that the ALJ's RFC adequately accounted for the limitations caused by his mental health impairments. [Filing No. 13 at 11.]

The ALJ does not need to discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). However, the SSA provides guidance as to what must be considered and articulated, including:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7.

The Court finds that Gary B. did not present enough evidence to establish that he is unable to sustain work because of the need to attend medical visits. Nearly every claimant requires treatment for their impairments. When an ALJ assesses an RFC that does not include the need for absences or breaks, it can be inferred that the ALJ did not credit the need for further relevant limitations. As a practical matter, the Court finds that it would be a needless formality to require that the ALJ articulate in every decision how he or she concluded that necessary treatment visits could be attended while maintaining a full-time work schedule. While the ruling makes clear that the adjudicator must consider the ability to sustain an "equivalent work schedule" in assessing an RFC, the Court finds it only necessary for an ALJ to explain how he or she reached a conclusion that full-time work could be maintained if the case record establishes "material inconsistencies or ambiguities" with the relevant evidence. *Id*.

The Seventh Circuit has not directly addressed the articulation requirements concerning the ability to sustain work in accord with necessary treatment. The Seventh Circuit did hold in *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014), that it was improper for an ALJ to suggest that chronic migraines would still allow a significant amount of time to work. "Here, the ALJ

appears to have concluded that incapacitating migraines once or twice a week would not be problematic because she would still have most of the week without such symptoms, but that essentially ignores the inability to schedule the incapacitating migraines." *Id.*

Other district courts within the Seventh Circuit have touched on the issue. In *Cooper v. Colvin*, 224 F. Supp. 3d 663, 669 (C.D. Ill. 2016), the court explained:

> In this case, the ALJ's decision lacks any meaningful discussion about how Plaintiff's impairments impacted Plaintiff's ability to sustain full-time work. Specifically, the ALJ did not discuss Petitioner's ability to perform sustained work activities on a regular and continuing basis despite evidence in the record that Plaintiff would miss two days a month for his infusions, two days a month due to migraines or the side-effects from the medication for migraines, and may miss some amount of work due to his multiple medical appointments, many of which, despite Defendant's arguments, appear necessary to monitor and control Plaintiff's various conditions.

The court found it notable that "the ALJ did not address Plaintiff's testimony that the infusions could not be scheduled on the weekends . . . ." *Id.* at 669–70. In *Gossage v. Colvin*, 2016 WL 2733331, at *6 (S.D. Ill. May 11, 2016), the court remanded based on an ALJ's failure to adequately consider a claimant's ability to sustain work, noting:

> During the period at issue (April 1, 2010 through October 16, 2012), Ms. Gossage was hospitalized for a total of 25 days and spent another 8 days in an inpatient rehabilitation facility. Following her discharge from the rehabilitation facility, she was on non-weightbearing status for about 21 days, and she had to use one crutch to walk for about another 21 days. In addition, she had substantial outpatient care. She attended almost daily wound care sessions for over a month, and she attended a total of 41 physical therapy sessions for her back and shoulder. She also had a number of doctor's office and emergency room visits.

By contrast in *Fieleke v. Colvin*, 2015 WL 540303, at *10 (N.D. Ind. Feb. 9, 2015), the court held that the claimant had not established that her treatment would preclude sustaining work, noting that many of her visits were for physical therapy, which lasted less than an hour. "It is also possible that these and other medical appointments could have been and would be able to be scheduled around a work schedule, such as on the weekends, during the lunch hour, or before or after work."

7

*Id.* In *Hoppa v. Colvin*, 2013 WL 5874639, at *5 (W.D. Wis. Oct. 31, 2013), the court held that the claimant had not produced enough evidence establishing that competitive attendance would be precluded, but also addressed policy concerns implicated by the inquiry. "If the 'sheer number of medical visits' were sufficient on its own, claimants could manufacture their own disabilities simply by going to the doctor as often as possible for any or no reason." *Id.* Taken together, an ALJ may be obligated to address a claimant's ability to sustain work, if the claimant presents sufficient evidence demonstrating that the ability would be precluded by treatment visits which are necessitated by the claimant's impairments. Necessary visits may preclude sustaining work if they are too frequent or otherwise cannot be scheduled around a full-time competitive work schedule, including if those visits regularly occur on an emergency or otherwise unpredictable basis.

Here, Gary B. does not present evidence that necessary appointments would preclude full-time work. He receives rather standard treatment with a psychiatrist every few months and weekly therapy. The frequency of those visits does not appear to be work preclusive, nor is there evidence that the length of those visits would make it difficult to schedule them around a full-time work schedule. He has not presented any evidence that the providers are inflexible about when the visits must occur. Moreover, the ruling above does not imply a full-time work schedule must be 9am to 5pm, which is notable given that the other work Gary B. was found capable of performing included being a cleaner or dishwasher. Furthermore, Gary B. testified that he needed to see a case manager on a weekly basis, primarily to help get him through the "bind" he was in after his mother passed away, including needing to clear out the home where they had lived together and finding alternative housing. [Filing No. 5-2 at 78; *see* Filing No. 5-11 at 5–9 (case manager needed due to depression-related low motivation to work or find supplemental income, to assist with organizing including money management to meet rent and utility demands, applying for disability benefits, and cleaning

out and selling the overwhelming amount of contents in his home.)] Given the nature of the assistance provided by the case manager, it is doubtful that arrangements could not have been made to schedule the visits around working, which would have alleviated many of the primary concerns. The fact alone that Gary B. must attend these limited appointments does not give rise to a material inconsistency in the record with his ability to sustain work that needed to be reconciled. Given the evidence presented, the Court finds it was not reversible error that the ALJ did not specifically discuss the likelihood that work could be sustained in accord with necessary treatment visits.

Gary B. also cites *Gatliff v. Comm'r of the Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999), for the proposition that "[w]here it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." [Filing No. 8 at 19.] However, the Court agrees with the Deputy Commissioner that the holding of the Ninth Circuit is not implicated by the record. [Filing No. 13 at 11.] Gary B. does not present any evidence of record, besides the evidence already discussed above, which establishes that he cannot hold a job for more than a short period. *See Gatliff*, 172 F.3d at 693 ("The Commissioner concedes that Gatliff 'has a work history showing that he performs a job for a duration of about two months,' and does not dispute that the pattern will continue, but contends that Gatliff is capable of substantial gainful activity because he is not precluded from moving from one job to the next job after termination."). While Gary B. testified that he has been unable to maintain work in the past because of panic attacks and depression, *see* [Filing No. 5-2 at 56], his earnings record does not indicate any work attempts since 1990, [Filing No. 5-8 at 11]. Further, there is no indication that he was receiving mental health treatment when he last attempted work, nor that a pattern would

continue with the benefit of treatment and within the parameters of the ALJ's RFC finding (which will be discussed in greater detail below.)

### B. Whether the ALJ Failed to Properly Address Evidence of Limitations Maintaining Concentration, Persistence, or Pace

Gary B.'s second argument takes issue with the ALJ's findings that he has no more than mild difficulties with concentration, persistence, or pace and that "there are no mental status examination findings showing any significant concentration, memory, or attention deficit." [Filing No. 8 at 21 (quoting Filing No. 5-2 at 38).] Specifically, Gary B. argues that the ALJ "apparently completely ignored" numerous reports from his case manager and therapist that indicated he would avoid necessary tasks, required prompting and encouragement, was frequently tangential in conversation, and could not focus to complete those tasks. [Filing No. 8 at 21.] Gary B. asserts that the ALJ cannot select and discuss only the evidence that favors her conclusion and further must provide an accurate and logical bridge between the evidence and her conclusions. [Filing No. 8 at 22 (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).] Gary B. also contends that the ALJ did not adequately convey the limitations she deemed credible when assessing his ability to perform other work via hypothetical questioning of the VE. [Filing No. 8 at 22–23 (citing *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011)).] Furthermore, Gary B. argues that the ALJ did not address his reported difficulty sleeping at night and his need to sleep during the day. [Filing No. 8 at 23–24.]

The Deputy Commissioner argues that the ALJ adequately supported her conclusions about Gary B.'s mental health functioning, particularly with concentration, persistence, or pace, by reference to the examination findings in the record. [Filing No. 13 at 12.] The Deputy Commissioner observes that the ALJ did reference the treatment notes from Gary B.'s therapist and case manager and argues that the ALJ supported her RFC finding by appropriately weighing

10

those sources' opinions, as well as the other opinion evidence of record. [Filing No. 13 at 12–15.] The Deputy Commissioner contends that Gary B. has not supported his argument that the full limitations of record were inadequately conveyed to the VE with citation to the record establishing the credited limitations that were omitted, but rather only summarizes case law. [Filing No. 13 at 15–17.] Furthermore, the Deputy Commissioner argues that the ALJ did not need to discuss all the records referring to fatigue, that the evidence was not sufficient to support a finding that the symptom precluded all work, and the ALJ was not required to convey limitations to the VE that she did not credit. [Filing No. 13 at 17–19.]

The ALJ did not completely ignore the line of evidence as Gary B. contends, consisting of his treatment records with his case manager and therapist. "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires [her] to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). The ALJ acknowledged the relevant evidence, noting that Gary B. received assistance with "applying for social security benefits, bill management, and coping skills," and he "showed symptoms of hopelessness, lack of healthy sleep at night, difficulty concentrating, low motivation, and loose conversation." [Filing No. 5-2 at 42.] Moreover, the ALJ weighed the opinion evidence from those providers, discussed the portions of their opinions that she credited and discredited, and provided specific reasons for both with each opinion. [Filing No. 5-2 at 42–43.] Gary B. does not specifically argue that the ALJ improperly weighed those opinions and to the extent the argument is implied, he does not develop the argument.

Gary B. also argues that the ALJ effectively ignored the line of evidence, again referring to the difficulties documented by his case manager and therapist, by not providing a logical bridge from that evidence to her conclusions. However, the Court finds that argument unavailing as well.

For one, unlike the case he cites for the general proposition, Gary B. does not demonstrate that any portion of the ALJ's analysis included "illogical or erroneous statements that bear materially on her conclusion." *Sarchet*, 78 F.3d at 307. The Court finds that the argument, as well as the ALJ's treatment of the evidence, most closely aligns with the holding of another case cited by Gary B. in which the Seventh Circuit stated:

> An ALJ may not select and discuss only that evidence that favors [her] ultimate conclusion, but must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the path of [her] reasoning. *See Herron [v. Shalala],* 19 F.3d [329,] at 333 [(7th Cir. 1994)]; *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993) (per curiam). An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required. *Herron,* 19 F.3d at 333. But that is not the situation here.

*Diaz*, 55 F.3d at 307. As in *Diaz*, when the Court concludes that the ALJ has considered the important evidence and has minimally articulated her reasoning sufficiently to allow the Court to follow her logic, Gary B.'s argument effectively asks the Court to reweigh the evidence, which is beyond the scope of review. *Id*. at 307–08 (citing *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)).

As noted above, the ALJ recognized that Gary B.'s case manager and therapist observed symptoms related to his depression and anxiety. His case manager provided considerable assistance with certain tasks, including completing his disability application, providing the SSA with a description of his functional abilities, managing his money to pay rent, and accessing community resources to pay his utilities. [Filing No. 5-12 at 21.] Gary B. regularly put off the completion of those tasks on his own. [Filing No. 5-12 at 16.] His case manager further observed that he seemed to "struggle significantly with anxiety whenever case manager tries to help him get things done." [Filing No. 5-13 at 16.] His case manager observed that his anxiety was "evidenced" by him "veering off topic frequently." [Filing No. 5-13 at 21.]

However, the ALJ observed that formal mental status examinations did not reveal significant signs of concentration, memory, or attention deficit, when explaining her findings that (1) Gary B. had only mild limitations with the functional area of concentrating, persisting, or maintaining pace, [Filing No. 5-2 at 38], and (2) portions of his therapist's opinion were inconsistent with the record, [Filing No. 5-2 at 42]. The ALJ discussed the specific findings of those examinations—which were contemporaneously recorded by Gary B's treating psychiatrist at the same provider where he treated with his therapist and case manager—and described him to be "calm, cooperative with coherent and relevant speech. His mood was described as fine and his effect euthymic with no deficits noted in his thought process and thought content." [Filing No. 5-2 at 41 (citing Filing No. 5-12 at 10; Filing No. 6-12 at 56).] Gary B. also consistently attended his treatment visits without any evidence of personal hygiene neglect (well-groomed and properly attired) and there was no indication that he arrived late or cancelled appointments. *See* [Filing No. 5-12 at 16; Filing No. 5-12 at 21; Filing No. 5-13 at 16; Filing No. 5-13 at 21.]

Moreover, the ALJ supported her finding that Gary B. had only mild limitations in the functional area of adapting and managing oneself by referencing his testimony that he lives alone and independently manages his household activities. [Filing No. 5-2 at 38.] When explaining her credibility finding she explained in more detail that he testified "that his activities include household chores, simple meal preparation, grocery shopping, and driving regularly." [Filing No. 5-2 at 40; *see* Filing No. 5-2 at 74–75 (testimony describing an ability to live independently).] Gary B. testified that he required a case manager to get through the stressful situation he was in after his mother passed and to organize the "complex task" of transitioning from living in her house to on his own. [Filing No. 5-2 at 78.]

Furthermore, the ALJ depended on the opinions of experts. In assessing Gary B.'s mental health functioning, the ALJ gave the most weight to an examining psychologist:

> Great weight is given to [the] opinion of consultative examiner, Kristin Perrone-McGovern, Ph.D., as to her overall findings and insofar as it is suggested that the claimant has no more than moderate limitations.[6] (Exhibit B11F). This is consistent with the medical records as a whole as well as the claimant's own description of his activities, including household chores, shopping, and driving.

[Filing No. 5-2 at 43.] Dr. McGovern completed a diagnostic interview and mental status examination revealing some abnormalities with (1) pressured, rapid and tangential speech, (2) serial sevens concentration, and (3) recent memory recall. [Filing No. 5-12 at 36–40.] Dr. McGovern also reviewed an initial treatment record and assessment from Gary B's case manager. [Filing No. 5-12 at 36-40.] Dr. McGovern was aware that Gary B. required outpatient therapy and was able to live independently and complete relevant activities consistent with the descriptions in this Entry, including arriving at the appointment on time, alone, and appropriately groomed. [Filing No. 5-12 at 36-40.] Dr. McGovern concluded that Gary B. was "likely to be able to do a simple repetitive task continuously for a two-hour period," and "likely to work at an average pace."[7] [Filing No. 5-12 at 36-40.]

In a somewhat related argument, Gary B. cites to a variety of cases within a line of authority applying the general rule that the VE must be made fully aware of the claimant's limitations before an ALJ can depend on the VE's testimony that work could be performed by a similarly situated

---

[6] The ALJ found only mild limitation in the functional areas discussed so far but did find moderate limitation with Gary B's ability to interact with others, noting the indication that he has panic attacks, yet remains capable of attending doctor appointments, grocery shopping, talking with others, and driving. [Filing No. 5-2 at 38.]

[7] Employers will generally allow a break after every two hours of continuous work. *See Givens v. Colvin*, 551 Fed.Appx. 855, 862 (7th Cir. 2013).

individual as the claimant.[8] *See* [Filing No. 8 at 22–25.] Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron*, 19 F.3d at 337; *Indoranto v. Barnhart,* 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); SSR 96–5p (S.S.A. July 2, 1996), 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 416.945. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009)); *see Craft*, 539 F.3d at 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings).

However, the Court agrees with the Deputy Commissioner that Gary B. does not complete his argument by referencing the basis in the record for additional limitations that were omitted. For example, in *O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010)*, the Seventh Circuit credited an argument that "the ALJ erred in omitting her moderate limitation on concentration, persistence and pace from the hypothetical posed to the VE, even though the ALJ found that such a limitation exists." The "ALJ is required only to incorporate into [her] hypotheticals those impairments and limitations that [she] accepts as credible." *Schmidt v. Astrue,*

---

[8] As is typically the case, the ALJ posed a hypothetical question to the VE that described limitations consistent with the ALJ's eventual RFC finding. [Filing No. 5-2 at 89.]

15

496 F.3d 833, 846 (7th Cir. 2007). Gary B. seems to insinuate that the ALJ should have credited additional limitations for the reasons already discussed and rejected by the Court above.

In any event, the Court finds that the ALJ's RFC finding adequately accounted for the limitations she found credible. As noted above, the ALJ found only mild limitations with concentration, persistence, or pace and gave the greatest weight to Dr. McGovern's opinion that Gary B. could concentrate on simple tasks for continuous two-hour periods while maintaining an adequate pace. The RFC limited Gary B. to "only unskilled work" and excluded "fast-paced work." [Filing No. 5-2 at 39.] Moreover, the Seventh Circuit has "let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283, 285–89 (7th Cir. 2002) (upholding hypothetical that excluded situations likely to trigger the claimant's panic disorder)). As discussed above there is substantial evidence that the manifestations of anxiety observed by Gary B.'s case manager and therapist were specifically triggered by the stress of needing to complete complex tasks. The RFC appropriately limited Gary B. from needing to remember "complex instructions." [Filing No. 5-2 at 39.] The ALJ specifically excluded work in a "hospital or nursing room setting," [Filing No. 5-2 at 39], based on Gary B.'s testimony that those settings triggered intrusive thoughts and panic, [Filing No. 5-2 at 87–88]. Furthermore, consistent with the likelihood of anxiety and the ALJ's finding that Gary B. was moderately limited with social interaction, she excluded work around crowds, requiring confrontation with the public, and more than superficial interaction with coworkers. [Filing No. 5-2 at 39.] Accordingly, the Court finds that the ALJ's RFC findings was supported by substantial evidence and adequately reflected the limitations of record that the ALJ found credible.

16

**C. Whether the ALJ's Subjective Symptoms Assessment was Patently Wrong**

Gary B. argues that the ALJ failed to articulate her application of SSR 16-3p with analysis of the factors used to evaluate subjective symptoms, including daily activities and aggravating factors. [Filing No. 8 at 26–27.] Gary B. asserts that the ALJ did not provide specific reasons for her finding. [Filing No. 8 at 26–27.] Gary B. also argues that the ALJ relied solely on the objective evidence to discredit his symptoms, contrary to law. [Filing No. 8 at 28.] Gary B. reiterates that the ALJ ignored evidence from treatment with his case manager. [Filing No. 8 at 29.] Furthermore, Gary B. acknowledges that the ALJ considered his activities of daily living, but argues that she failed to consider that they were considerably less strenuous than she alleged and impermissibly relied on his minimal activities. [Filing No. 8 at 29–30.]

Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The ruling specifies that the SSA uses "all of the evidence to evaluate the intensity, persistence, and

limiting effects of an individual's symptoms," but continues to utilize the regulatory factors relevant to a claimant's symptoms, including daily activities and precipitating and aggravating factors. SSR 16-3p, 2017 WL 5180304, at *7; 20 C.F.R. § 416.929(c)(3).

The Court declines to provide an extensive discussion of the ALJ's subjective symptoms analysis, which would largely reiterate the analysis above. The Court finds that Gary B.'s argument is largely conclusory and does not establish that the ALJ's assessment was patently wrong. In addition to analyzing the objective evidence and opinion evidence, the ALJ took into consideration Gary B.'s testimony, including his ability to live independently, as well as the types of tasks and settings that precipitate his most severe anxiety symptoms. She also considered his reported hobbies which include playing guitar, reading, and watching television, [Filing No. 5-2 at 38], indications of noncompliance with medication, [Filing No. 5-2 at 40], and the relatively conservative treatment required for his mental health impairments, [Filing No. 5-2 at 43]. While Gary B.'s activities are somewhat limited, and he has required more assistance during a time of heightened stress to manage complex tasks, the Court is mindful that the ALJ's assessment of his subjective symptoms was in the context of a fairly restrictive RFC finding that credited significant limitations.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274. Taken together, the Court can find no legal basis presented by

Gary B. to reverse the ALJ's decision that he was not disabled during the relevant time period.

Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 10/10/2018

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel